HERMANSEN, Respondent, vs. SLATTER and wife, Appellants.

*February 9—March 14, 1922.*

*Specific performance: Contract to convey land: Time as essence: Intention of parties: Conduct: Waiver of nonperformance: Estoppel: Findings of court.*

1. Where time is not of the essence of a contract and the thing to be done can be as well done at a later as at an earlier day without detriment to the party for whom it is to be done, the delay will not prevent specific performance.
2. In equity the modern tendency is not to hold time as of the essence of a contract; but if the contract, with the surrounding facts and circumstances, shows that the parties intended time to be of the essence, full effect will be given to the intention, although there is no clause in the contract declaring it so.
3. If either party unreasonably delays in complying with the terms of the agreement the other may assign a reasonable time within which performance shall be made. The time thus allotted becomes essential, and if performance is not made before it elapses equity will not aid the defaulting party in enforcing the contract.
4. The evidence (stated in the opinion) as to the surrounding circumstances and conduct of the parties is *held* to present a question for the trial court as to whether it was the intention of the parties that a contract for a conveyance of land on a fixed date made time as of the essence.
5. Though the title of a vendor of land was defective, if he had acted with reasonable promptness to perfect it, or if delay in perfecting it was waived, specific performance might be compelled even though title was not perfected until the time of the trial.
6. In an action for specific performance, the evidence is *held* not to justify disturbing findings of the trial court that the vendee did not waive the delay of the vendor in perfecting title, or estop himself to object.

APPEAL from a judgment of the circuit court for Pierce county: GEORGE THOMPSON, Circuit Judge. *Affirmed.*

Action to recover $1,000, earnest money paid by plaintiff to defendant upon the making of a contract for the sale of a certain farm to plaintiff.

The complaint set out the contract, the material parts of which are as follows:

"That the said party of the second part [plaintiff] agrees and binds himself . . . to pay to the party of the first part the sum of $12,000 in manner as follows, to wit: $1,000 down, the receipt whereof is hereby confessed and acknowledged, and $11,000 to be paid on November 1, 1920, the above payments being intended to apply when fully completed on the purchase price of the following described premises: . . .

"Conveyance to be made by said parties of the first part by good and sufficient warranty deed upon payment to them of said $11,000 as aforesaid on November 1, 1920, and possession to be given upon payment of said sum; said parties of the first part agree to furnish an abstract of title showing a good and marketable title in them, free and clear from all defects. . . .

"It being further understood . . . that said $1,000 paid is earnest money, and in case of the failure of said party of the second part to comply with the terms and conditions of this contract said sum shall be forfeited to first parties as liquidated damages, but said forfeiture shall in no way affect the rights of either party hereto for specific performance of this contract."

The breach alleged was that on November 1, 1920, defendant did not tender an abstract showing a clear and marketable title, but in fact offered one which showed several unsatisfied mortgages incumbering the property. The relief demanded was a return of the earnest money and cancellation of the contract.

The answer alleged that on November 1, 1920, defendant tendered a good and sufficient warranty deed and notified plaintiff that an action to quiet title had been begun to cure the defects set out in the complaint and that judgment for defendant would follow as a matter of course; that said judgment was in fact obtained on December 21, 1920; that on December 23d the abstract was continued to show a good and marketable title; that defendant has ever since

been ready, able, and willing to deliver the abstract; and that plaintiff has refused to receive the same.

As a second defense defendant alleged that plaintiff secured the abstract about September 1, 1920; that on October 15th he notified defendant of certain defects and demanded that an action to quiet title be brought; that under the Wisconsin practice, final judgment in such an action cannot be rendered until sixty-two days after the commencement of the action; that defendant brought the action and secured final judgment on December 24, 1920, sixty-seven days after he had received the notification from plaintiff; that defendant brings the deed and abstract to court and tenders them to plaintiff.

By way of counterclaim defendant alleged the above facts and prayed for a decree of specific performance of the contract.

The contract was made March 31, 1920. At that time the abstract was in the possession of the Federal Farm Loan Bank. On the next day it was returned to defendant, who took it to the Farmers and Merchants Bank, River Falls, where it remained until the first of the following September. It is undisputed that the Federal Bank would not accept the title shown by the abstract as collateral for a loan until some corrections should be made.

Plaintiff testified that defendant agreed to send him the abstract; that on July 11th he asked for the abstract and failed to get it; that on July 22d he again asked defendant for the abstract and called at the Farmers Bank to get it and was told he could not have it because the head of the bank was not there; that on the above dates he told defendant that they had sold his farm and would surrender possession November 1st, and would have to have possession of the farm in question on that date.

Defendant introduced testimony tending to show that plaintiff could have secured the abstract from the bank at any time, particularly on July 22d, when he looked at it, but,

according to the testimony of the cashier, did not ask for it. Judgment was rendered dismissing the counterclaim, canceling the contract, and awarding plaintiff $1,000, with interest from March 31, 1920, and the costs of the action.

For the appellants there was a brief by *Knowles & Doolittle* of River Falls, and oral argument by *Mr. L. S. Doolittle.*

For the respondent there was a brief by *Howard D. Blanding* of St. Croix Falls and *John E. Foley* of Ellsworth, and oral argument by *Mr. Blanding.*

JONES, J.    The trial court found as facts, in addition to the making of the contract and the payment of $1,000, that it was the intention of the parties that the time fixed for performance should be a material and essential part of the contract; that on November 1st defendants failed to execute their part of the contract; that defendants did not procure a sufficient abstract until December 23, 1920, and did not tender it until March 10, 1921, when the cause came up for trial; that the plaintiff fully performed his part of the contract; that the time for performance had not been extended; and that plaintiff was not estopped to claim the benefits of the provisions of the contract.

In finding that time was of the essence of the contract the trial court did not base the decision on the written contract alone.

The contract contains no specific provision making time of the essence.

Where time is not of the essence of the contract and the thing to be done can be as well done at a later as an earlier day without detriment to the party for whom the thing is to be done, the delay will not prevent specific performance. It is the modern tendency, especially in equity, not to treat time as of the essence unless there is some express term in the contract so providing. 13 Corp. Jur. 686; 4 Page, Contracts (2d ed.) §§ 2105, 2106.

But, "although there is no express provision in a contract which makes time of the essence, the contract taken as a whole and construed in connection with the surrounding facts and circumstances may show that the parties intended that time should be of the essence of the contract, and if such intention appears, full effect will be given to it."    4 Page, Contracts (2d ed.) § 2108.

It was agreed that the conveyance was to be made and an abstract showing merchantable title was to be furnished on a given day, and there was a condition that a loan might be procured on the premises payable on the same day.    There was testimony that the vendee had sold his own farm and that he notified the vendor on July 11th and July 22d of this fact; that he then gave notice that, as he had sold his farm and must give possession on November 1st, he must then get possession of the premises involved in the contract.

All these facts were doubtless considered by the trial court in coming to the conclusion that it was the intention of the parties that the question of time was not merely formal but was essential.

In order to prevent injustice it has frequently been declared to be the rule that:

"If either the vendor or the vendee has improperly and unreasonably delayed in complying with the terms of the agreement on his side, the other party may, by notice, fix upon and assign a reasonable time for completing the contract, and may call upon the defaulting party to do the acts to be done by him, or any particular act within this period. The time thus allotted then becomes essential, and if the party in default fails to perform before it has elapsed, the court will not aid him in enforcing the contract, but will leave him to his legal remedy."    Pomeroy, Spec. Perf. (2d ed.) p. 482, sec. 395, citing many cases.

In view of the undisputed fact that the vendor had his abstract April 1st and that it showed the title to be defective; that he had made no move to have it corrected until October 15th, there is much force in the claim of counsel for vendee

that the notices given on July 11th and 22d sufficed to make time an essential element of the contract. It is clear that the acts of parties subsequent to the execution of the contract may have an important bearing in determining the question whether time was intended to be essential. *James v. Knox,* 155 Wis. 118, 143 N. W. 1071. It is true that there is conflict in the testimony as to whether these notices were given and as to the time when the vendee could have obtained the abstract for examination, but these were matters for the determination of the trial court.

It is argued by counsel for the vendor that, even if time was of the essence of the contract, the vendee by his conduct waived the provision and estopped himself to claim the benefit of it. This claim is based on evidence that the vendee obtained the abstract for examination by his attorney and gave no notice of any objection to the title until six weeks later, October 15th, and that on that day, at the office of the vendor's attorney, it was discussed that it would require five or six weeks to perfect the title and that the vendee made no objection, and that relying on this the action to quiet title was commenced and carried through.

The counsel for the vendor are correct in their contention that parties may waive the strict performance of contracts of this character and may be estopped by their conduct. There is undoubtedly force in their claim that the abstract was retained for an unreasonable time for examination by the vendee and his counsel, but the parties and their counsel lived in towns a considerable distance apart and the vendor had undoubtedly shown great negligence by his delay in furnishing the abstract and by failing for so long a time to take any steps to comply with the plain terms of his contract. If he had acted with reasonable promptness, or if the court had found that his delay had been waived, the court would have been justified in compelling specific performance even though the title was not perfected until the time of the trial. For this there is abundant authority.

*Gates v. Parmly,* 93 Wis. 294, 66 N. W. 253, 67 N. W. 739; Pomeroy, Spec. Perf. (2d ed.) sec. 376, and cases cited.

The argument that the vendor was subjected to expense in perfecting his title has little weight, since such a proceeding would have been necessary at some time to give him a marketable title.   But the questions of waiver and estoppel in this case were questions of fact for the trial court.   The trial judge heard and saw the witnesses and their demeanor, and we do not feel justified in disturbing his findings holding that there was no waiver or estoppel.

*By the Court.*—Judgment affirmed.