BOARDMAN and another, Appellants, vs. COURTEEN, Respondent.

*April 30—July 27, 1918.*

*Real-estate brokers: Right to commissions: Vendor and purchaser: Reasonable time for making down payment: Waiver.*

In an action by brokers to recover a commission claimed to have been earned by procuring a purchaser able, ready, and willing to buy defendant's land on the terms agreed upon, the direction of a verdict in defendant's favor is *held* error, the questions whether the purchaser was to have a reasonable time, after examination of the abstract, to make an agreed down payment of $50,000, whether such time had expired when the defendant withdrew the property from the market, and whether by giving notice of such withdrawal defendant intended to terminate the contract, so that further attempted compliance with the terms of the agreement of sale was unnecessary,—being upon the evidence questions for the jury.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

This action was brought to recover commission, $3,000,

claimed to have been earned in procuring a purchaser able, ready, and willing to purchase at the price of $150,000 certain real estate owned by the defendant.

The plaintiffs offered evidence tending to show that they procured a purchaser able, ready, and willing to purchase according to the terms of the contract, and the defendant offered evidence tending to show the contrary.

At the close of the evidence the court below directed a verdict in favor of the defendant on the ground that the undisputed evidence showed that the plaintiffs had not complied with the contract, therefore had not earned their commission. Judgment was entered in favor of the defendant, from which this appeal was taken.

For the appellants there was a brief by *Benjamin Poss* and *Christian Doerfler* of Milwaukee, and oral argument by *Mr. Doerfler*.

For the respondent there was a brief signed by *Flanders & Fawsett,* attorneys, and *Charles F. Fawsett,* of counsel, and oral argument by *John E. Tracy,* all of Milwaukee.

The following opinion was filed May 21, 1918:

KERWIN, J.    The controlling question here is whether there was sufficient evidence to carry the case to the jury upon the issues involved.    The evidence tends to show that in the years 1913 and 1914 the plaintiffs were engaged in the real-estate business in the city of Milwaukee; that in 1913 one Wetzel was requested by Sidney G. Courteen, husband of the defendant and her agent, to find a customer for the property referred to in the complaint at the price of $150,000.    Wetzel listed the property with the plaintiffs at the price of $150,000, $50,000 cash and a mortgage for $100,000.    Afterwards, the plaintiffs having procured one Miller, a prospective purchaser for the property, it was arranged that the purchaser with the plaintiffs, or one of them, meet the agent of defendant, Mr. Courteen, to agree upon terms.    Thereafter the purchaser,

Mr. Miller, *Mr. Garner,* one of the plaintiffs, and Mr. Stern, Mr. Miller's attorney, met Mr. Courteen, the defendant's husband and agent, at Mr. Courteen's office. Mr. Kellogg, confidential man of Mr. Courteen, was also present. The terms were then agreed upon between the purchaser, Mr. Miller, Mr. Courteen, and *Mr. Garner,* to the effect that the sale was to be for $150,000 cash, $50,000 down and the balance in sixty or ninety days. The question of title then came up and was discussed, Mr. Courteen claiming that it was all right and produced an abstract. It appeared that the abstract had not been brought down to date. Mr. Stern, Mr. Miller's attorney, agreed that if the abstract were brought down to date and delivered to him by the following Saturday noon, May 17th, he would have it examined by the following Monday noon, May 19th. It was agreed that Mr. Courteen would have the abstract at Stern's office by Saturday noon. The testimony is not very clear as to just when the abstract was delivered to Mr. Stern, but it was sometime between noon and 4 o'clock Saturday afternoon. There is also some evidence tending to show that Mr. Stern was through with the examination of the abstract by noon the following Monday, but there is also evidence that one of the plaintiffs telephoned for the abstract during the forenoon Monday and Mr. Stern claimed he was not through with it, but that plaintiff might call for it at 4 o'clock that afternoon, which was done and the abstract obtained, Mr. Stern being through with it at that time and pronouncing the title all right.

There is also some evidence tending to show that during the forenoon Monday, on two occasions, the plaintiffs called for the abstract and asked that it be returned, but Mr. Stern declined to return it until 4 o'clock. The following morning, May 20th, Mr. Wetzel telephoned *Mr. Garner,* one of the plaintiffs, that Mr. Courteen had informed him over the phone that the property was withdrawn from the market.

It also appears from the evidence that after the agreement

of sale on the terms above mentioned the plaintiffs immediately commenced to make arrangements to procure the money to consummate the purchase, and there is evidence tending to show that at the time of the alleged withdrawal of the property from the market and afterwards the plaintiffs had produced a purchaser, Mr. Miller, who was able, ready, and willing to purchase according to the agreement. It further appears from the evidence that on the 21st day of May, 1913, defendant sold the property to one F. A. Landeck for the sum of about $148,200.

In directing a verdict in favor of the defendant it appears that the court below was of the opinion that immediately at noon Monday, May 19, 1913, at the time Stern was supposed to have finished examination of the abstract, Mr. Miller was to pay down the sum of $50,000 in cash in order to comply with the terms of the contract. The court is of opinion that this is too strict a construction of the contract under the facts and circumstances of the case. Mr. Stern held the abstract until 4 o'clock Monday afternoon, and there is at least some evidence tending to show that he required it in the examination of the title up to about that time, especially since there is evidence tending to show that he did not obtain it under the strict letter of the agreement, viz. at noon May 17th. It was at least a question for the jury whether, under the circumstances of the case, the plaintiffs were bound to produce the $50,000 cash earlier than by noon Tuesday the 20th, and there is evidence that at that time the property had been withdrawn from the market and was sold to F. A. Landeck on Wednesday, May 21st.

The abstract was held by Stern until at or about the close of banking hours May 19th, and the evidence of withdrawal was early in the forenoon May 20th.

Now the question arises whether or not the plaintiffs should have had a reasonable time, after the examination of the abstract, to produce the $50,000 cash, and whether under the

evidence it was not for the jury to say they had such reasonable time before the withdrawal of the property from the market and sale to Landeck.    The jury, we think, would have the right to infer that upon notice of withdrawal of the property from the market it was the purpose of the defendant to terminate the contract, therefore further attempted compliance on the part of the plaintiffs in carrying out the offer was unnecessary.    *McCabe v. Jones,* 141 Wis. 540, 124 N. W. 486; *Bunyard v. Farman,* 176 Mo. App. 89, 161 S. W. 640.

The contract between plaintiffs and defendant is not clear as to whether the payment of $50,000 was to be made on or before a specified date.    At least from all the evidence and surrounding circumstances the jury would have the right to determine whether the plaintiffs were to have a reasonable time, after examination of the abstract, to make the down payment and whether such time had expired.

Upon all the evidence produced the court is of opinion that the case should have been submitted to the jury on the contested facts, therefore it was error to direct a verdict.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.

A motion for a rehearing was denied, with $25 costs and costs of motion, on July 27, 1918.