ZUELKE, Respondent, vs. GERGO and another, Appellants.

*December 6, 1950—January 9, 1951.*

*Paul D. Kain* of Milwaukee, for the appellant Maria Gergo.

*Edward T. Berkanovic* of Milwaukee, for the appellant Peter Maretich.

For the respondent there was a brief by *Paul, Ebert, Paul & Kuswa* of Milwaukee, and oral argument by *Mr. Kuswa.*

FAIRCHILD, J.  There is a distinction pointed out by the cases between a breach of promise to do a thing and a breach of promise as to the time when it shall be done. Courts "have treated stipulations as to time as subsidiary and of less importance than the thing promised. . . .. If on interpretation of the contract, the court finds that the defendant is not protected by any express limitation or condition or by any provision that the plaintiff's performance at the exact time

that he promised is vital, the justice of excusing the defendant because of a breach by the plaintiff of his promise to perform at a stated time, depends chiefly" as to whether the nature of the contract is such as to make time of vital importance. See 2 Williston, Sales (rev. ed.), pp. 694, 696, secs. 452a, 453.

The importance of time of performance depends upon the terms in the contract and the circumstances appearing from the acts of the parties. In some cases the forfeiture feature may be employed. However, a contract is to be entered into in good faith by both parties, and usually for the purpose of accomplishing a result agreeable to those concerned. The essence of a contract is that the minds of the parties thereto must meet on the same thing. Intent or understanding of the parties is necessarily an essential element. See 15 Words and Phrases, Essence (perm. ed.), p. 244. One may not precipitately rescind a contract because of a mere delay and certainly not when he does it to avoid discharging an obligation in an executory contract which he has assumed and failed to meet; and which is the very object concerning which the contract was entered into. There are cases, and this is one, where the right to rescind and impose a penalty does not exist unless the rescinding party would be entitled to specific performance.

The final words passing between the plaintiff and defendants in the two letters appearing in the foregoing statement of facts are with relation to the transaction. On the plaintiff's part, he stands ready, willing, and able to perform when the defendant is ready to deliver a merchantable title to the property. The parties at different times had some discussion about modifying the terms, but there is no testimony tending to indicate a purpose on the part of the plaintiff or on the part of the defendants to abandon the contract until the final word was written in the letter of defendants after certain weaknesses in the title had been pointed out.

In reversing the decision of the civil court, the circuit court, on the plaintiff's appeal, necessarily reached the conclusion from the testimony in the record that there was no evidence to sustain defendants' position in assuming the right of rescission or entitling them to the judgment granted by the civil court; and that findings to that effect are against the great weight and clear preponderance of the evidence. The circuit court ordered a reversal of the judgment of the civil court and directed the entry of a judgment in plaintiff's favor, that is, for the recovery of the amount of money that had been advanced as a down payment.

The learned circuit judge pointed directly to the problem involved, and in his decision dealt with an existing situation, indicating the important lines of inquiry. An important factor becomes apparent when consideration is given to the letter of the plaintiff to the seller dated December 6, 1946, and delivered on that day, and also to the letter of the defendants dated December 6, 1946, but not received by plaintiff till December 11th, although there was an attempt by the postal authorities to deliver the latter on December 7, 1946.

It is established that the defendants were not at any time covered by the acts here involved able to deliver the property under a marketable title. It is also established that they had the opportunity, had they been able to and in good faith so desired, to complete the transaction, the contract providing explicitly for a ninety-day period for such purpose. This appears from a consideration of the terms of the contract and the actions of the defendants with relation to the attempt to exact a forfeiture. It is also clear that the defendants were in no way prevented by plaintiff from carrying out their part of the contract. The contract does not contain a provision making time of the essence, but it does, as set forth in the foregoing statement of facts, provide that the seller shall provide a complete abstract of title extended to within twenty days of the closing of the transaction, "said abstract to show

the seller's title to be marketable and in the condition called for by this agreement, and to be delivered to the buyer for examination at least fifteen (15) days prior to the date set for the closing." The suggested time for the closing was "on or before December first." The proceedings under this clause of the contract were not seriously adhered to, and the terms thereof were treated with indifference by both parties. The contract contains a provision that the deal was to be concluded within twenty days from the time to which the abstract was extended. The abstract was only brought down to October 28, 1946, but it was not delivered to the plaintiff until two weeks later. The question naturally arises as to whether the nature of the contract is such as to make time of vital importance, and here the acts of the parties, particularly those of the defendants, become of consequence. The absorption of equitable principles by the law has modified the severity of the rule giving undue importance to mere dates. In Restatement, 1 Contracts, p. 406, the more lenient rule is referred to in sec. 276 (a) to the effect that unless the nature of the contract is such as to make performance on an exact day vital or the contract in terms so provides, the failure by a party to perform on the particular day does not discharge the other party. There is also a rule which is entitled to serious consideration that when the terms of a contract are, or, by any act of parties under the contract, become indefinite, uncertain, and susceptible of two constructions, and by giving them one construction one of the parties would be subject to a forfeiture, and by giving them the other no such forfeiture would be incurred and no injustice would be done to the other party, the contract should be construed as not creating a forfeiture. *Jacobs v. Spalding,* 71 Wis. 177, 190, 36 N. W. 608. With reference to this same point, we find that in *Droppers v. Hand,* 208 Wis. 681, 242 N. W. 483, where it was contended that time was of the essence of the contract, the court said with reference to the facts there, which are sufficiently similar

to those here (p. 686): "We deem this contention to be without merit. The fact that a contract sets a date for the closing of a transaction does not of itself make time of the essence of the contract." On the plaintiff's part, it is established that he was, at all times material here, ready, able, and willing to carry out his contract if and when there was available to him a marketable title to the property he was to buy.

Time not being of the essence under the facts of the case, and there being no stipulation which would require such an interpretation, the acts of the defendants prevent them from successfully maintaining the claim that they had a right to rescind without offering a marketable title. The controlling elements appear in the analysis of the case made by the learned circuit judge. In his decision he recited:

"The down payment accompanied a written offer to purchase, a standard form, . . . and the offer contained the usual provisions that an abstract of title extended to within twenty days of closing showing seller's title to be marketable was to be delivered to the buyer for examination 'at least fifteen (15) days prior to the date set for the closing.' The offer further provided that 'the buyer shall notify the seller in writing of any valid objection to the title within ten (10) days after the receipt of said abstract and the seller shall then have a reasonable time . . . to rectify the title. . . .' The offer also contained the usual provision that if the buyer should fail to carry out the agreement the purchase price should, at the option of the seller, be forfeited and paid to the seller as liquidated damages subject to deduction of broker's commission.

"The facts are not seriously in dispute. The offer was made on October 9, 1946, and was accepted on the same day. The abstract was extended to October 28, 1946, and was delivered to plaintiff on November 11, 1946. Plaintiff was prevented from having the abstract examined immediately by reason of the illness of his attorney."

The abstract was delivered later to another attorney, Arthur L. Ebert, and there was an examination of the title

without undue delay. The abstract was lengthy and of an involved character which required time. Mr. Ebert delivered his opinion dated Wednesday, December 4, 1946, with the abstract, to the defendant Maretich on Friday, December 6, 1946. The court noted that said abstract had been extended to October 28, 1946, at eight o'clock in the morning, some thirty-four days before the suggested date of closing, although the contract provided that a complete abstract of the title extended to within twenty days of the closing, showing the seller's title to be marketable;—

". . . was to be delivered to the buyer for examination within the time above stated.

"On said December 6,.1946, the defendant Gergo signed a letter . . . prepared by her counsel and addressed to the plaintiff Zuelke terminating the sales agreement and declaring the down payment forfeited and asserting the right to 'retain the deposit of $1,000 paid under the agreement.' This letter was delivered to the plaintiff five days later (on December 11, 1946), and also one week after the broker, Maretich had received from plaintiff's attorney, Mr. Ebert, the opinion of the latter . . . upon the abstract extended to October 28, 1946. . . .

"The plaintiff testified that he was at all times ready, willing, and able to proceed with the transaction; . . . and that the reason he did not complete the transaction was because the title to the property was not marketable as called for in the sales agreement."

The circuit court was then of the opinion that the defendants were not entitled to declare a forfeiture, that time was not of the essence of the contract, and that circumstances acquiesced in by the defendants were such that the provision as to time for objecting to the title should not be literally construed; that the plaintiff did not lose his rights in the transaction; that the opinion on the abstract dated December 4, 1946, shows the scope of the work which was performed by the attorney in examining the abstract. The court cited

cases in point, to wit: *Droppers v. Hand,* 208 Wis. 681, 686, 242 N. W. 483; *Miswald-Wilde Co. v. Armory Realty Co.* 210 Wis. 53, 55, 243 N. W. 492, 244 N. W. 589, 246 N. W. 305; *Neumann v. Gorak,* 243 Wis. 503, 506, 507, 11 N. W. (2d) 155; *Hoffmann v. Danielson,* 251 Wis. 34, 39, 27 N. W. (2d) 759; *Hermansen v. Slatter,* 176 Wis. 426, 429, 187 N. W. 177; *Buntrock v. Hoffman,* 178 Wis. 5, 13, 189 N. W. 572.

The circuit court was convinced, and properly so, that items forming the basis of objection to title were "of much importance and amply adequate to require steps on the part of the seller to make her title marketable in accordance with the well-established" rules. *Douglass v. Ransom,* 205 Wis. 439, 451, 452, 237 N. W. 260; Id. 198 Wis. 445, 224 N. W. 473; *Haumersen v. Sladky,* 220 Wis. 91, 103–105, 264 N. W. 653; Anno. 90 A. L. R. 609, and cases there collated; *Whitfield v. McClendon,* 251 Ala. 591, 38 So. (2d) 856; *Curatelli v. Barnard,* 120 N. J. L. 476, 200 Atl. 795. There was no showing of ability or willingness on the part of defendants to perform under the marketable-title clause in the contract. And the rule with relation to liquidating damages has been declared to be that liquidated damages, when stipulated in a contract to be paid in violation of the terms thereof, are recoverable only in case of a substantial breach. *Hathaway v. Lynn,* 75 Wis. 186, 43 N. W. 956. It is considered that no such breach occurred in this case. The letter accompanying the opinion on title is set out in the statement of facts.

We are not overlooking the fact that the notice of rescission was sent by registered mail and apparently deposited in the post office on December 6, 1946. But we do have in mind that the opinion calling attention to the defects in the title was delivered first to the agent and eventually to the seller, and that this brought on the notice of rescission. The so-called notice of rescission and demand did not reach the

plaintiff until the 11th of December. *Hotel Hay Corp. v. Milner Hotels, Inc.,* 255 Wis. 482, 39 N. W. (2d) 363.

In conclusion it is considered that the mere mentioning of dates under the circumstances presented by this record does not make time material, nor does it relieve the defendants from the obligation assumed which required them to perform by delivering a marketable title. Their default broke the sequence of events which would have brought about the accomplishment designed by the contract. Their inability to furnish a marketable title or their change of mind with respect thereto does not bring them to a position where a hastily drawn notice of rescission can result in ending the contract. *Young v. Grosnick,* 256 Wis. 225, 40 N. W. (2d) 382. Up to the moment when the seller attempted to rescind there had not been a delay of any length interfering in any way with the needs of the seller or the expectations of the buyer. There was reasonable assurance that the obligations of the contract would be promptly met by the plaintiff upon perfecting of the title by the defendants. Had that occurred, the performance of the contract would have been proceeded with. Of this there is reasonable assurance.

We agree with the circuit judge who in wording his opinion in the matter said:

"Plaintiff has not lost his rights to recover back the $1,000 part payment or deposit by any act or omission on his part. Defendants, on the other hand, by the letter of December 6, 1946, . . . written and delivered after they had been apprised of the opinion on title rendered by plaintiff's attorney Ebert, have made clear a refusal to perform the contract of sale. The tenor and reasons for that letter are clear and convincing. Plaintiff therefore became relieved of making any useless tender of the balance of purchase money or taking any other steps, such as the making of any demand, before commencing his suit for the recovery of the down payment."

*By the Court.*—Judgment affirmed.